**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BRIAN CLEMENCICH,     :
                                     : Civil Action No. 10-1141 (JAP)
        Plaintiff,     :
                                     :
                                     :
            v.                : **OPINION**
                                     :
DR. MARK COLEMAN, et al.,    :
                                     :
        Defendants.    :

**APPEARANCES:**

    BRIAN CLEMENCICH, Plaintiff <u>pro se</u>
    Central Reception and Assignment Facility
    P.O. Box 7450
    Trenton, New Jersey 08628

**PISANO**, District Judge

Plaintiff, Brian Clemencich, a state inmate confined at the Ocean County Department of Corrections in Toms River, New Jersey, (at the time he submitted this Complaint), seeks to bring this action <u>in forma pauperis</u>. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a)(1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed.

## I.   BACKGROUND

Plaintiff, Brian Clemencich ("Clemencich"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: Dr. Mark Coleman, dentist at the Ocean County Department of Corrections ("OCDOC"); Captain C. Dey, Chief of the Support Services Division of the OCDOC; Maria Alicia, Director of Medical Services at OCDOC; Theodore J. Hutler, Jr., Warden of OCDOC; and the Ocean County Board of Chosen Freeholders and its members and successors, namely, James F. Lacey, John P. Kelly, John C. Bartlett, Jr., Gerry P. Little, and Joseph H. Vicari. (Complaint, Caption, ¶¶ 4-8). The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Clemencich alleges that, on December 16, 2009, he was seen by defendant Dr. Mark Coleman to have his upper left second premolar extracted. On December 20, 2009, Clemencich submitted a medical slip to see the dentist because he had loose stitches and a new tooth ache on the right side of his mouth. On December 22, 2009, Clemencich submitted another medical slip complaining about pain and swelling on the right side of his mouth due to a

fractured tooth.  Clemencich was seen by Dr. Coleman on December 23, 2009, for post-operative care and for removal of his stitches from the tooth extraction performed on December 16, 2009.  When Clemencich complained to Dr. Coleman about the new pain and swelling on his right side, Dr. Coleman told plaintiff that he would have to submit another request slip for more treatment.  After waiting several days, on December 27, 2009, Clemencich again submitted a medical slip to the dental department.  Plaintiff complained that the pain and swelling on the right side had become worse and that it was now in three different locations.  He also complained that he was having difficulty eating.  On December 29, 2009, Clemencich submitted yet another medical slip, complaining about the swelling and pain and how it was now causing him to suffer headaches and dizziness.  (Complaint, ¶¶ 10-16).

On December 29, 2009, Clemencich also filed an administrative grievance when the dentist failed to see him that day.  Plaintiff characterized his grievance as emergent, and complained about the lack of care as well as the quality of care.  On December 30, 2009, his grievance was referred to the medical department for investigation.  According to institutional policy, an emergent complain must be answered within 48 hours.  Plaintiff did not receive any response to his grievance within the 48-hour time frame.  (Compl., ¶¶ 17-19).

On January 1, 2010, Clemencich filed another grievance complaining about the pain as well as his inability to eat, his headaches and his dizziness.  On January 3, 2010, plaintiff submitted another medical slip to the dental department, complaining about his lack of sleep and inability to eat from the pain, his headaches and dizziness, and the fact that his face was swollen.  (Compl., ¶¶ 20-22).

Clemencich's two grievances were merged and referred to defendant Maria Alicea, Director of Medical Services, for handling.  She referred the matter to Dr. Coleman for review.  On January 5, 2010, plaintiff received a response to his grievances.  Dr. Coleman had stated that he had extracted a tooth on December 16, 2009, and saw plaintiff on December 23, 2009 for post-operative examination.  During that exam, Dr. Coleman did not find any swelling and plaintiff did not appear to be in distress.  Dr. Coleman further stated that he did not receive any of the medical slips from plaintiff.  (Compl., ¶¶ 23-24).

On January 5, 2010, Clemencich submitted another medical slip, stating that he had missed his dental appointment because he was at court for the day.  He complained that he was still in pain and his mouth was swollen.  Clemencich was called to the medical department on January 6, 2010, and was examined by a medical doctor, Dr. Yu.  Dr. Yu prescribed plaintiff an antibiotic and Motrin for pain, and allegedly told the nurse to

have plaintiff seen by a dentist as soon as possible. (Compl., ¶¶ 25, 26).

On January 8, 2010, Clemencich submitted another medical slip to the dental department, complaining that he was still in severe pain and that the antibiotic and Motrin prescribed by Dr. Yu were not helping. He requested to see a dentist as soon as possible. That same day, Clemencich appealed from the response to his earlier grievances, stating that the response received had nothing to do with his grievances, which were about the failure of the dentist and staff to do anything about his present condition. (Compl., ¶¶ 27, 28).

Plaintiff was eventually seen by Dr. Coleman on January 11, 2010. Clemencich complained about his pain, headaches, dizziness and lack of eating. He also told Dr. Coleman about the pain on the right and left sides of his mouth from at least three different teeth. Dr. Coleman allegedly told plaintiff to pick which tooth hurt him the most and he would be placed on the waiting list for treatment. (Compl., ¶ 29).

On January 14 and 15, 2010, Clemencich submitted more medical slips to the dental department complaining about his pain and inability to sleep and eat. He claimed that his situation was an emergency. On January 15, 2010, plaintiff was seen by Dr. Coleman, who told plaintiff there was nothing more he could do but expedite his place on the treatment list. Dr. Coleman also

told plaintiff to order Motrin from the commissary.  When asked about plaintiff's inability to eat, Dr. Coleman told plaintiff that he needed dentures or a plate, but that would not be provided by the OCDOC.  Plaintiff would have to wait until he is released to get dentures.  (Compl., ¶¶ 30-32).

On January 16, 2010, plaintiff received a response to his appeal from Captain Dey.  Captain Dey stated that the dentist had seen plaintiff a few times and did not see the need to schedule plaintiff for emergent care.  Accordingly, Captain Dey found no failure to act by the staff.  (Compl., ¶ 33).

On January 17, 2010, Clemencich sent a letter to Warden Hutler, outlining his complaints and sending him copies of his medical request slips.  He further complained about the staff's failure to treat his needs.  Plaintiff states that he has not received a response from Warden.  (Compl., ¶ 34).  Thereafter, on January 20, 21, 24, 26, 28, and 31, 2010, plaintiff submitted medical slips for dental treatment.  He complained about his pain, difficulty eating, that he looked like a chipmunk due to swelling, and that his gums are sensitive and bleeding.  Clemencich emphasized that his problems are emergent and serious and that he needs treatment as soon as possible.  (Compl., ¶¶ 35-40).

Clemencich filed another grievance on February 1, 2010, complaining about the lack of medical attention he was receiving

6

despite his numerous medical request slips.  On February 3, 2010, defendant Alicea responded by stating: "This is not a person who is not being taken care of.  The decision of acuteness is made by the professional not you."  (Compl., ¶¶ 41-42).

On February 17, 2010, plaintiff was seen by Dr. Coleman, who took x-rays of plaintiff's teeth.  Dr. Coleman told plaintiff that he was scheduled to have his upper right molars extracted by the end of March 2010.  He prescribed Motrin for pain.  (Compl., ¶ 43).  Plaintiff filed this Complaint on or about February 23, 2010.

Plaintiff alleges that he has been denied medical/dental care for seven weeks, and has not received proper care for his infected and fractured teeth, in violation of his Eighth and Fourteenth Amendment rights.  He continues to suffer pain, headaches, dizziness, swelling, and difficulty eating and sleeping.  He also asserts a claim of medical negligence against Dr. Coleman, and negligence claims against the other defendants for their part in failing to provide for plaintiff's dental care.

Plaintiff seeks declaratory and injunctive relief.  Specifically, he asks that the defendants be compelled to provide immediate medical/dental care to restore and maintain full function of plaintiff's mouth and teeth, preferably by a qualified orthodontist.  Plaintiff further asks for compensatory

7

damages in excess of $900,000.00, and punitive damages of $450,000.00.

On or about March 11, 2010, this Court received plaintiff's motion for a temporary restraining order or a preliminary injunction against the defendants. (Docket entry no. 2). On or about March 29, 2010, this Court received plaintiff's notice of address change, indicating that he has been transferred to the Central Reception and Assignment Facility ("CRAF"). Because plaintiff is no longer at OCDOC, his motion for preliminary injunctive relief compelling the named defendants to provide medical/dental treatment is rendered moot, and the motion (Docket entry no. 2) will be denied accordingly.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an

§ 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S.

9

at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

10

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 1949-50; see

11

also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

---

[2] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Clemencich brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

III.   ANALYSIS

It appears that Clemencich was a convicted inmate awaiting sentencing during the time the alleged events occurred. Accordingly, his claims that he was denied medical care will be examined under the Eighth Amendment, which applies to convicted prisoners.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would

14

recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ...

[which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

This Court finds, based on the allegations of the Complaint, that Clemencich has failed to show the necessary element of

16

deliberate indifference to support his Eighth Amendment denial of medical care claim.  Assuming for purposes of this Opinion only that plaintiff has shown a serious medical need,[3] Clemencich cannot show deliberate indifference by Dr. Coleman in his treatment of plaintiff.  While Clemencich sent almost daily medical slips for treatment, he was seen several times and had been scheduled for molar extractions in March 2010.  He was prescribed medications, an antibiotic for infection and Motrin for pain.  Further, the dentist did not find that plaintiff's dental problems were serious or emergent to warrant immediate attention.  Rather, the dentist found that plaintiff needed dentures,[4] and molar extractions, which were scheduled for March 2010.  Indeed, upon examination, Dr. Coleman did not find the swelling as alleged, nor did he find plaintiff to be in the distress as alleged.  Thus, at most, there appears to be a disagreement by plaintiff as to the treatment he should receive.  As stated above, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White, 897 F.2d at 110.  Such allegations sound in medical negligence, which is not actionable under the Eighth Amendment as a claim of a constitutional

---

[3] This fact is clearly in dispute.  While plaintiff alleges that his dental problems are emergent and serious, Dr. Coleman has diagnosed plaintiff's needs as non-emergent.

[4] Dr. Coleman did tell Clemencich that dentures would not be provided while plaintiff was temporarily confined at OCDOC.  It appears that Clemencich was a convicted prisoner awaiting sentencing during the relevant time he was at OCDOC.  Plaintiff has since been transferred to CRAF for prison assignment to serve his term.

deprivation.  See Farmer, 511 U.S. at 837-38.  Accordingly, the denial of medical care claim should be dismissed with prejudice, with respect to Dr. Coleman, for failure to state a claim.[5]

---

[5] Clemencich also asserts a violation of his Fourteenth Amendment rights with respect to the failure to provide him medical/dental care.  Denial of medical care claims are considered under the due process clause of the Fourteenth Amendments for pretrial detainees, rather than the Eighth Amendment.  See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983)(holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  See also Montgomery v. Ray, 145 Fed. Appx. 738, 740, 2005 WL 1995084 (3d Cir. 2005)(unpubl.)("the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, ...; i.e. whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of  guilt....") (citing Hubbard, 399 F.3d at 158).  In Hubbard, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees. 399 F.3d at 165-67.

Here, it appears that Clemencich was a convicted prisoner at the time of the incident at issue.  To the extent, however, that plaintiff was a pretrial detainee, plaintiff still fails to state a claim under the Fourteenth Amendment.  As discussed above, Clemencich was treated for his dental needs on several occasions.  He was also scheduled for molar extractions.  The only problem for plaintiff was that the dentist did not diagnose Clemencich's dental problems as emergent.  Thus, these admitted allegations do not show that any delay or denial of treatment was excessive in relation to any stated purpose of jail security and administration, and there is no showing that the actions or inactions of defendants were intended as punishment and retaliation.  See Hubbard v. Taylor, 399 F.3d 150, 158-63 (3d Cir. 2005); Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993).  Therefore, any Fourteenth Amendment claim asserting denial of medical care also must be dismissed for failure to state a claim.

18

Likewise, plaintiff's claims against the remaining defendants alleging failure to provide medical care, failure to properly train and supervise medical staff, and failure to oversee that proper medical care, should be dismissed because they are derivative of the principal claim against Dr. Coleman alleging denial of medical care.  Because plaintiff received medical attention for his dental problems, and was scheduled for molar extractions, there is no basis for any of the claims against the remaining non-medical defendants.  Moreover, plaintiff has since been transferred from the OCDOC facility, and any claim of continuing denial of medical care is moot.

Finally, pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim.  The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000)(citations omitted).  As no such extraordinary circumstances appear to be present here, this Court will dismiss without prejudice the state law claims asserting negligence and medical malpractice.

Therefore, the Complaint will be dismissed in its entirety as against all named defendants, for failure to state a claim upon which relief may be granted at this time.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's claims asserting denial of medical care, failure to provide medical care, and failure to train, supervise and/or oversee the medical/dental staff, will be dismissed with prejudice, in their entirety as against all named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  Further, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims of negligence and medical malpractice, and these claims will be dismissed without prejudice accordingly.  Finally, plaintiff's motion for a temporary restraining order or a preliminary injunction is denied as moot because plaintiff has been transferred from the Ocean County Department of Corrections.  An appropriate order follows.

/s/Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: May 18, 2010